### BUNNELL et al. v. SUGG.

(Court of Civil Appeals of Texas. March 1, 1911.)

1. PUBLIC LANDS (§ 175*)—SURVEYS—DETERMINATION OF BOUNDARY.

Rev. St. 1895, art. 4147, provides that all streams so far as they retain an average width of 30 feet shall be considered navigable streams, and shall not be crossed by the lines of any survey. Held, that a contention that a survey is void on account of crossing a navigable stream is not available against a patent issued by the state on the part of one claiming under a junior grant.

[Ed. Note.—For other cases, see Public Lands. Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

2. PUBLIC LANDS (§ 175*)—SURVEYS—DETERMINATION.

The statute is merely directory, and, though a stream was within the statutory definition, the fact that a line of a survey crossed it would not render the survey illegal or void.

[Ed. Note.—For other cases, see Public Lands. Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

3. ADVERSE POSSESSION (§ 40*)—ACTIONS TO RECOVER REAL ESTATE.

Where one had no title or color of title to certain land, limitations of three years could not be set up in his behalf.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 40.*]

Appeal from District Court, Irion County; J. W. Timmins, Judge.

Action by J. D. Sugg against Frank Bunnell and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Taylor & Frink, for appellants. Blanks, Collins & Jackson, for appellee.

RICE, J. While this suit was in form of trespass to try title to a strip of land 171 varas wide by 1,234 varas long, off of the north end of the E. Weygand survey, No. 1,895, in Irion county, containing 37.3 acres of land, yet the same was, in fact, brought only for the purpose of determining the true north boundary line of said survey No. 1,895

---

and the south boundary line of survey No. 3,058, in the name of J. W. Brock. . The defendant answered (1) by plea of not guilty; (2) by a special plea to the effect that the survey of plaintiff was illegal because the lines thereof extended across the Middle Concho river, a navigable stream; and (3) interposed the plea of three and five year statutes of limitation. There was a jury trial resulting in a verdict establishing the line in accordance with plaintiff's contention, and judgment was entered awarding said strip of land to him, from which this appeal is prosecuted.

It was agreed between the plaintiff and defendant that defendant's title to survey No. 3,058, in the name of J. W. Brock, is regular in defendant from the sovereignty of the soil, and that plaintiff's title to survey No. 1,895 in the name of E. Weygand is regular in plaintiff from the sovereignty of the soil, subject in both instances to defendant's plea of illegality of the survey on account of crossing a navigable stream, and to the question of limitation pleaded by him.

Appellee contended that these surveys joined each other, and that the north line of survey 1,895 was the south line of survey No. 3,058, and hence there was no vacancy. No controversy arises either as to the charge of the court or the sufficiency of the evidence to support the verdict of the jury as to this phase of the case on the question of boundary; but it is contended by appellant in his third assignment that the court erred in that part of its charge wherein it undertook to define a navigable stream, because the same did not give the definition of navigable stream as provided in article 4147 of the Revised Statutes, and because the same was on the weight of evidence and misleading. The court, in effect, charged the jury that, if the Middle Concho river was a navigable stream, then they would find for the defendant, stating that a navigable stream is defined by statute as a stream of average width equal to or exceeding 30 feet, which means an average width of 30 feet of water in ordinary seasons, without reference to the width between the banks, and, "unless you find that the average width of the water in said stream between and adjacent to said two surveys of land equals or exceeds 30 feet, then I charge you that said stream would not be navigable in contemplation of law, and you will consider such proposition no further." The vice in said charge, as contended by appellant, is in telling the jury that a navigable stream means one with an average width of 30 feet of water in ordinary seasons, without reference to the width between the banks. Article 4147, R. S., provides that "all lands surveyed for individuals lying on navigable water courses shall front one-half of the square on the water course, and the line running at right angles with the general course of the stream, if circumstances of lines previously surveyed under the laws will permit, and all streams, so far as they retain an average width of thirty feet shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey." There was proof to the effect that the Middle Concho at the point in question had a width much in excess of 30 feet from bank to bank, but the proof also showed that the water in said river at said point was much less than 30 feet in width. While we do not deem the question raised as important in the disposition of this case, as will hereafter be indicated, still we are not prepared to admit that the charge is incorrect, because the statute uses the expression "and all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams" within the meaning of the article referred to. It seems to us that this might properly be regarded as referring to the width of the water, instead of the width between the banks; but we find it unnecessary to determine this question, since in our opinion the question of the illegality of this survey cannot be raised by appellant, but only by the state, if at all.

Survey No. 1,895, belonging to appellee, was patented in October, 1859. Survey No. 3,058 was a school section awarded by the state to J. W. Brock in 1902. Appellee contends that appellant's plea that the survey is void on account of crossing a navigable stream is not available against a patent issued by the state on the part of one claiming under a junior grant, but is an attack upon the regularity of a patent, which may only be asserted by the state. We are inclined to think this contention is well taken. In the case of Millar v. Ward, 124 S. W. 440, it is said: "Where the power to grant exists, it has been held that a person whose claim had its origin subsequently cannot question the prior patent for fraud in obtaining it, or for any other irregularity. In fact, where the power to make the grant existed no person not having a prior title or equity had ever been allowed in this state to question a patent." In Frontroy v. Atkinson, 45 Tex. Civ. App. 324, 100 S. W. 1023, it was held, as shown by the syllabus, that a patent to school land cannot be attacked on the ground that the title was procured by fraud by private persons whose claim of title had its inception after the patent was issued; Chief Justice Key saying that "it has been repeatedly held by our Supreme Court that, in the absence of some prior right or equity, no one except the state can attack a patent upon the ground that the title was procured by fraud"—citing many cases in support of the doctrine.

In Little v. Williams, 88 Ark. 37, 113 S. W. 340, it is said, as shown by the syllabus, that: "Where a government survey erroneously included within the meandered lines of a nonnavigable lake a quantity of swamp land as a part of the lake bed, but neither

the United States Land Department nor the state of Arkansas had ever questioned the correctness of the survey, but had always treated it as correct, it could not be impeached by an individual claimant in a collateral proceeding." In Russell v. Maxwell, 158 U. S. 253, 15 Sup. Ct. 827, 39 L. Ed. 971, Justice Brewer said: "In the nature of things, a survey made by the government must be held conclusive against collateral attack in controversies between individuals. There must be some tribunal to which final jurisdiction is given in respect to the matter of surveys, and no other tribunal is so competent to deal with the matter as the land department. None other is named in the statutes. If in every controversy between neighbors the accuracy of a survey made by the government was open to question, interminable confusion would ensue." In Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 530, 49 L. Ed. 857, it is said: "The official surveys made by the government are not open to collateral attack in an action at law between private parties." See, also, 2 Farnham on Water and Water Rights, § 422.

This being in the nature of a collateral attack by the holder of a junior survey to set aside an older survey on the ground of illegality, it was immaterial whether the court committed an error in the charge as complained of or not; because, even if it were granted that the charge was incorrect in the respect mentioned, still it could not under the law be held reversible error. Besides this, it seems that this statute is merely directory, and, notwithstanding the fact that the Middle Concho may come within the statutory definition of a navigable stream, forbidding the location of surveys across the same, yet this would not render the survey illegal or void. See Horton v. Pace, 9 Tex. 81; Desmuke v. Houston, 31 S. W. 198. For which reasons we overrule this assignment.

The court refused to give appellant's special charge on the three-year statute of limitation, but, instead, charged the jury that the facts in the case did not raise the issue of three year limitation, and that they would not consider the same in the determination of the case. This action of the court is assigned as error. We overrule this contention for the reason that in our judgment the statute of limitations is not applicable. It was admitted that plaintiff had title to survey No. 1,895, and that defendant had title to survey No. 3,085; so that, if the land in controversy was on the latter survey, defendant needed no limitation to perfect his title, but, if on the former, it was evident that he had no title or color of title thereto, so that his possession of three years could avail him nothing. The verdict of the jury, which is supported by the evidence with reference to boundary, shows that the north line of survey No. 1,895 is where plaintiff claims it,

thereby placing the land in controversy upon said survey, of which no complaint is made by defendant; and, as defendant had no title or color of title to any land upon survey 1895, it is evident that the statute of limitations of three years could not be set up in his behalf. See Wiley v. Lindley, 56 S. W. 1001; Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026.

The remaining assignment questions the sufficiency of the evidence to support the verdict; but, since in our judgment the same is ample to sustain the findings of the jury in this respect, this assignment is overruled.

Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.